IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                    *
PATRICK BAEHR, et al.,
                                    *
      Plaintiffs,
                                    *
        v.
                                    *   CIVIL NO.: WDQ-13-0933
THE CREIG NORTHROP TEAM, P.C.,
et al.,                             *

      Defendants.                   *

*       *       *       *       *       *       *       *       *       *       *       *       *
```

MEMORANDUM OPINION

Patrick Baehr and Christian Baehr ("the Named Plaintiffs"),

on behalf of themselves and others similarly situated

(collectively, "the Plaintiffs"), sued Long & Foster Real

Estate, Inc. ("Long & Foster"), The Creig Northrop Team, P.C.

("The Northrop Team"), Creighton E. Northrop, III ("Creig

Northrop"), Carla Northrop, Lakeview Title Company, Inc.

("Lakeview"), and Lindell C. Eagan, (collectively "the

Defendants"),[1] for violating the Real Estate Settlement

Procedures Act ("RESPA").[2]  Pending are several motions.  The

---

[1] For ease of reference, Long & Foster, The Northrop Team, Creig
Northrop, and Carla Northrop will be referred to collectively as
"The Long & Foster Defendants."  That same group, without Long &
Foster, will be referred to collectively as "The Northrop
Defendants."  Lakeview and Eagan will be referred to
collectively as "The Lakeview Defendants."

[2] 12 U.S.C. §§ 2601 et seq.

Long & Foster Defendants' motion to dismiss will be granted in
part and denied in part as moot.  The Lakeview Defendants'
motion to dismiss will be denied as moot.  The Plaintiffs'
motion for leave to file an amended complaint will be granted in
part and denied in part.  The Plaintiffs' motion to certify a
class will be granted as amended by the Court.  The Long &
Foster Defendants' motion to strike, or in the alternative,
motion for leave to file surreply will be denied.

I.    Background[3]

      A.    Factual Background

      This case arises out of an alleged scheme for real estate
agents[4] to receive over half a million dollars in illegal

---

[3] The facts are from the amended complaint.  ECF No. 26, Ex. A
(hereinafter "Am. Compl.").  For a motion to dismiss for failure
to state a claim, the well-pled allegations in the complaint are
accepted as true.  *See Brockington v. Boykins*, 637 F.3d 503, 505
(4th Cir. 2011).  A motion to amend pleadings that may be futile
is treated as if the opposing party has moved to dismiss.  *See
United States ex. rel. Wilson v. Kellogg Brown & Root, Inc.*, 525
F.3d 370, 376 (4th Cir. 2008).  A court may consider "documents
incorporated into the complaint by reference, and matters of
which a court may take judicial notice" in deciding a motion to
dismiss or the futility of a motion to amend.  *See Tellabs, Inc.
v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[4] Long & Foster is the real estate broker for Creig Northrop,
Carla Northrop, and The Northrop Team.  *See* Am. Compl. ¶¶ 11,
12.  Long & Foster is a Virginia corporation registered to do
business in Maryland.  *Id.* ¶ 6.  The Northrop Team is a Maryland
corporation with its principal place of business in Howard
County.  *Id.* ¶ 3.  Creig Northrop is a resident of Howard
County, the President of the Northrop Team, and "a salesperson
for Long & Foster."  *Id.* ¶ 4.  Carla Northrop is a resident of

kickbacks from a title insurance service[5] for referrals over 13 years. Am. Comp. ¶ 1. Specifically, "the Northrop Defendants referred the Plaintiffs and members of the Class exclusively to Lakeview for real estate settlement services as a quid pro quo for the compensation by the Lakeview Defendants." *Id.* ¶ 15. The Defendants used a "sham employment arrangement and a sham Marketing Agreement" to "generate unearned fees and kickbacks." *Id.*

1.    The Named Plaintiffs' Home Purchase

In June 2008, the Named Plaintiffs hired Long & Foster, Creig Northrop, and the Northrop Team to represent them in buying a new home. *See* Am. Compl. ¶ 29. They referred the Named Plaintiffs to Lakeview for title and settlement services. *Id.* ¶ 30. Based on this recommendation, the Named Plaintiffs used Lakeview in the purchase of their home. *Id.* On July 25, 2008, the Named Plaintiffs closed on their home. *Id.*

2.    Alleged Kickback Scheme

"[T]o conceal" their illegal referral fee agreement, the Defendants "devised two separate sham arrangements." Am. Compl. ¶ 16. From 2000 through 2007, the Defendants created a "sham

---

Howard County, the Vice President of the Northrop Team, and "a salesperson for Long & Foster." *Id.* ¶ 5.

[5] Lakeview is a Maryland corporation that provides title services, and Eagan is the President and part owner of Lakeview. *See* Am. Compl. ¶¶ 7, 8, 14.

3

employment arrangement" between Lakeview and Carla Northrop, "to disguise payments of illegal referral fees." *Id.* ¶ 17. From 2000, Carla Northrop was a full-time employee of the Northrop Team. *Id.* ¶ 18. She "was also secretly receiving payments from Lakeview" under an employment agreement, even though she "did not perform any actual work or services for Lakeview." *Id.* Carla Northrop did not appear for work at Lakeview, and she did not conduct any closings or process any files for Lakeview. *Id.* Lakeview did not provide her with an office, telephone number, or email address. *Id.* The Defendants "concealed" Carla Northrop's "supposed employment at Lakeview from the public."[6] Her employment with Lakeview was never disclosed to the Named Plaintiffs or others similarly situated. *See* Am. Compl. ¶ 19.

In 2008, Lakeview stopped paying Carla Northrop. *See* Am. Compl. ¶ 20. Instead, Lakeview "began funneling the illegal kickbacks for referrals through a sham 'Marketing Agreement'" with Creig Northrop and The Northrop Team. *Id.* Creig Northrop and Eagan negotiated and signed the Marketing Agreement on behalf of the Northrop Team and Lakeview. *Id.* The Marketing Agreement provided that Creig Northrop and the Northrop Team

---

[6] *See* Am. Compl. ¶ 19. The Northrop team website did not mention her employment at Lakeview, her employment was not referenced in the Northrop Team client packet, and Lakeview's website did not list her as an employee. *Id.* Other employees of the Northrop Team and Long & Foster were unaware of her employment with Lakeview. *Id.*

would designate Lakeview as their exclusive settlement and title company and would "provide mostly unspecified 'marketing services.'" *Id.* ¶ 21. The Marketing Agreement also provided that Creig Northrop and the Northrop Team would not endorse any other settlement and title insurance companies, and they would "use their reasonable effort to cause its affiliates and their respective partners, stockholders, and senior officials" not to endorse any other company. *Id.* ¶ 22.

Under the Marketing Agreement, Lakeview agreed to pay Creig Northrop and the Northrop Team $6,000.00 per month for marketing services. *See* Am. Compl. ¶ 23. Lakeview actually paid as much as $12,000 per month. *Id.* Eagan "authorized the overpayments under the guise of the sham Marketing Agreement." *Id.* In total, Creig Northrop and the Northrop Team received over $500,000 under the Marketing Agreement. *Id.* There is no record of "any real joint marketing services reasonably related to actual amounts paid by Lakeview." *Id.* ¶ 24.

The relationship between Lakeview and the Northrop Defendants "was never disclosed to, and actively concealed from" Northrop's clients. *See* Am. Compl. ¶ 25. At every settlement Lakeview presented Affiliated Business Arrangement ("ABA") Disclosures prepared by Long & Foster. *Id.* The ABA Disclosure form stated:

> This is to give you notice that Long & Foster Real
> Estate, Inc. ("Long & Foster") has business
> relationship (e.g., direct or indirect ownership
> interest, joint ventures and/or contractual
> relationships including marketing agreements and/or
> office leases) with the following mortgage, title,
> closing, and insurance service providers . . . As a
> result of these relationships referrals to any of the
> above-listed entities may provide Long & Foster
> (and/or any of its subsidiaries or affiliates) with a
> financial or other benefit.

*Id.* The ABA Disclosure included several title companies,
but it did not include Lakeview. *Id.* Class members
"reasonably relied" that the disclosure "included the title
companies that Long & Foster, or its affiliates (including
the Northrop Team) had a financial relationship with." *Id.*

    B.   Procedural History

On March 27, 2013, the Named Plaintiffs, on behalf of
themselves and others similarly situated, sued the Defendants
for violating RESPA. ECF No. 1. On May 13, 2013, the
Defendants moved to dismiss. ECF Nos. 23, 26. On July 3, 2013,
the Plaintiffs opposed the motion, and moved for leave to file
an amended complaint. ECF Nos. 35, 36. On July 22, 2013, the
Defendants opposed the motion to amend the complaint. ECF Nos.
37, 39. On July 22, 2013, the Lakeview Defendants replied to
the Plaintiffs' opposition. ECF No. 40. On July 23, 2013, the
Long & Foster Defendants also replied. ECF No. 42. On August
8, 2013, the Plaintiffs replied in support of their motion to
amend. ECF No. 43.

On August 14, 2013, the Plaintiffs moved to certify the class. ECF No. 44. On September 27, 2013, the Long & Foster Defendants opposed the motion. ECF No. 47. On September 30, 2013, the Lakeview Defendants also opposed the motion to certify. ECF No. 50. On October 29, 2013, the Plaintiffs replied. ECF No. 53. On November 19, 2013, the Long & Foster Defendants moved to strike the Plaintiffs' reply, or in the alternative, moved for leave to file surreply. ECF No. 54. On December 6, 2013, the Plaintiffs opposed the motion to strike. ECF No. 55. On December 6, 2013, the Plaintiffs also filed a supplement to their reply. ECF No. 56.

II. Analysis

   A. Legal Standard

      1. Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's

7

notice-pleading requirements are "not onerous," the plaintiff
must allege facts that support each element of the claim
advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761,
764-65 (4th Cir. 2003). These facts must be sufficient to
"state a claim to relief that is plausible on its face." *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[]
facts that are 'merely consistent with a defendant's
liability'"; the facts pled must "allow[] the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must
not only allege but also "show" that the plaintiff is entitled
to relief. *Id.* at 679 (internal quotation marks omitted).
"Whe[n] the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged—but it has not shown—that the pleader is entitled to
relief." *Id.* (internal quotation marks and alteration omitted).

2. Rule 9(b)

Rule 9(b) requires that "the circumstances constituting
fraud be stated with particularity." Fed. R. Civ. P. 9(b). The
rule "does not require the elucidation of every detail of the
alleged fraud, but does require more than a bare assertion that
such a cause of action exists." *Kerby v. Mortg. Funding Corp.*,

8

992 F. Supp. 787, 799 (D. Md. 1998). To satisfy the rule, a plaintiff must "identify with some precision the date, place, and time of active misrepresentations or the circumstances of active concealments, specifying which Defendant . . . is supposedly responsible for those statements or omissions." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). The requirements of Rule 9(b) apply to allegations of fraudulent concealment.[7]

3.    Leave to Amend Complaint

Under Fed. R. Civ. P. 15(a)(2), a party may amend its complaint with its opponent's written consent or with leave of court. The Court "should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (internal citation and quotation marks omitted). An amendment is futile if it would fail to withstand a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

---

[7] When fraudulent concealment involves omissions of material fact, Rule 9(b)'s particularity requirements are relaxed. *See Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 538 (D. Md. 2011); *Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 822-23 (D. Md. 2005).

B.    The Plaintiffs' Motion for Leave to Amend Complaint

The Plaintiffs seek leave to file an amended complaint to "more specifically describe the steps the Defendants took to conceal the kickback scheme from the Plaintiffs." ECF No. 36-1 at 1.   The Defendants argue that the amendment is futile because it fails to cure the defects identified in the Defendants' motions to dismiss.   ECF No. 37 at 1-2; ECF No. 39 at 1.

1.    Statute of Limitations

The Defendants argue that the Plaintiffs' claim is barred by the statute of limitations.   ECF No. 23-1 at 6.   The Plaintiffs contend that their claim is timely because the statute of limitations is tolled under the doctrine of equitable tolling.   ECF No. 35 at 7.

In the Amended Complaint, the Plaintiffs allege a violation of the anti-kickback provision of RESPA.   *See* 12 U.S.C. § 2607; Am. Compl. ¶¶ 45-53.   An action under § 2607 of RESPA must be brought within one year of the occurrence of the violation.   12 U.S.C. § 2614.   Here, the date of the violation is July 25, 2008 when the Named Plaintiffs closed on their new home.   *See* Am. Compl. ¶ 30.   The Plaintiffs did not file their complaint until March 27, 2013, well outside the one-year statute of limitations under RESPA.   *See* ECF No. 1; 12 U.S.C. § 2614.   However, RESPA

claims may be subject to equitable tolling.[8] To invoke the
doctrine of equitable tolling, the Plaintiffs must show that
"(1) the party pleading the statute of limitations fraudulently
concealed facts that are the basis of the plaintiff's claim, and
(2) the plaintiff failed to discover those facts within the
statutory period, despite (3) the exercise of due diligence."
*Minter v. Wells Fargo Bank, N.A.*, 675 F. Supp. 2d 591, 596 (D.
Md. 2009) (*quoting Supermarket of Marlinton, Inc. v. Meadow Gold
Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995)).

A mere violation of RESPA is not a self-concealing wrong,
therefore fraudulent concealment cannot be established merely by
showing a violation of the statute. *See Minter v. Wells Fargo
Bank, N.A.*, 924 F. Supp. 2d 627, 642 (D. Md. 2013); *Mullinax v.
Radian Guar. Inc.*, 199 F. Supp. 2d 311, 329 (M.D.N.C. 2002). A
plaintiff must plead affirmative acts of concealment, which may
include acts of concealment involved in the statutory violation
itself. *See Minter v. Wells Fargo Bank, N.A.*, 279 F.R.D. 320,
324 (D. Md. 2012); *Supermarket of Marlinton, Inc.*, 71 F.3d at
125-26. A plaintiff can satisfy the due diligence requirement
"without demonstrating that it engaged in any specific inquiry."
*Supermarket of Marlinton, Inc.*, 71 F.3d at 128. "If the
plaintiff establishes that it was not (and should not have been)

---

[8] *See Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787, 792 (D.
Md. 1998); *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462,
470 n.10 (D. Md. 2012).

11

aware of the facts that should have excited further inquiry on its part, then there is nothing to provide inquiry." *Id.*

Here, the Plaintiffs sufficiently allege that the Defendants engaged in affirmative acts to conceal the kickback scheme. In the Amended Complaint, the Plaintiffs allege that the Defendants concealed the fact that the Northrop Defendants were receiving illegal referral fees from Lakeview, by disguising the kickback payments through sham employment and marketing agreements. *See* Am. Compl. ¶¶ 17-26. Although the Plaintiffs allege that Lakeview was not included in ABA Disclosures, they allege more than mere non-disclosure.[9] The Plaintiffs' allegations show the Defendants took steps to

---

[9] *See* Am. Compl. ¶ 25. Because the Plaintiffs have alleged that the Defendants engaged in affirmative acts of concealment by entering into sham agreements to disguise illegal kickback payments, the Plaintiffs have sufficiently pled fraudulent concealment. *Compare Davis v. Edgemere Fin. Co.*, 523 F. Supp. 1121, 1126-27 (D. Md. 1981) (plaintiffs did not sufficiently allege equitable tolling by alleging mere nondisclosure when nondisclosure "is the gravamen of the violation."); *and Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 470 n.10 (D. Md. 2012) (equitable tolling not sufficiently pled when complaint contained only conclusory allegation), *with Minter v. Wells Fargo Bank, N.A.*, 675 F. Supp. 2d 591, 596 (D. Md. 2009) (plaintiffs sufficiently alleged equitable tolling by alleging affirmative acts of uniform deception). The parties' extensive discussion of whether the Defendants had a duty to disclose employment or affiliation agreements is irrelevant in determining whether the Defendants fraudulently concealed violations of RESPA by entering into sham agreements. The issue is not whether the agreements were disclosed, but whether they were created as shams to hide payments in violation of RESPA.

conceal the referral payments under the guise of lawful employment or marketing agreements. *See* Am. Compl. ¶¶ 17-26.

Additionally, reasonable further inquiry would not have revealed the RESPA claim. Anyone who checked would have discovered only the seemingly valid employment or marketing agreements; they would not be on notice that the agreements were designed to conceal kickback payments.[10] The Plaintiffs did not discover their claim until March 16, 2013, after the limitations period had run, when Plaintiffs' counsel sent solicitation letters to potential class members after learning of the sham marketing agreement during discovery in other litigation. *See* Am. Compl. ¶ 26. Accordingly, the Plaintiffs have sufficiently pled their entitlement to equitable tolling, and their motion to amend is not futile.[11]

---

[10] *See Supermarket of Marlinton, Inc.*, 71 F.3d at 128 (claim not time-barred when reasonable further inquiry would not have revealed basis for claim).

[11] The Long & Foster Defendants also argue that equitable tolling of RESPA claims is limited to three years, relying on *Pedraza v. United Guaranty Corp.*, 114 F. Supp. 2d 1347 (S.D. Ga. 2000). ECF No. 23-1 at 18. In *Pedraza*, the Court held that the statute of limitation provided by § 2614 should be read as a statute of repose, therefore equitable tolling under RESPA is limited to claims that are brought within three years of the alleged violation. *Pedraza*, 114 F. Supp. 2d at 1353-54. The Court is not bound by *Pedraza*'s holding, and other Courts in this Circuit have found § 2614 to be a non-jurisdictional statute of limitations. *See Minter v. Wells Fargo Bank, N.A.*, 675 F. Supp. 2d 591, 594 n.1 (D. Md. 2009); *Mullinax v. Radan Guar. Inc.*, 199 F. Supp. 2d 311, 328 (M.D.N.C. 2002).

13

2.    Failure to State a Claim Against Carla Northrop

The Long & Foster Defendants argue that the Plaintiffs have

failed to state a claim against Carla Northrop because her

employment arrangement with Lakeview ended before the Baehrs

purchased their home.  ECF No. 23-1 at 19-20.  The Plaintiffs

contend that they sufficiently alleged that she participated in

the kickback scheme from 2002 to 2012 as Vice President of the

Northrop Team.  ECF No. 35 at 19-20.

In the Amended Complaint, the Plaintiffs assert a claim for

a violation of RESPA's anti-kickback provision, 12 U.S.C. §

2607(a).  *See* Am. Compl. ¶¶ 45-53.  Section 2607(a) of RESPA

provides that:

> No person shall give and no person shall accept any
> fee, kickback, or thing of value pursuant to any
> agreement or understanding, oral or otherwise, that
> business incident to or a part of a real estate
> settlement service involving a federally related
> mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a).  This provision does not prohibit "the

payment to any person of a bona fide salary or compensation or

other payment . . . for services actually performed."  12 U.S.C.

§ 2607(c)(2).  Under 12 U.S.C. § 2607(d)(2), any person who

violates the provision "shall be jointly and severally liable to

the person or persons charged for the settlement service

involved in the violation."

The Plaintiffs allege that Carla Northrop received payments from Lakeview under a sham employment arrangement disguising illegal referral fees to the Northrop Defendants from 2000 to 2007. *See* Am. Compl. ¶¶ 17-18. The Amended Complaint fails to allege that Carla Northrop gave or accepted a kickback in 2008 when the Baehrs purchased their home. *See* Am. Compl. ¶¶ 20, 29-30. The specific allegations that the Plaintiffs rely on to support their argument that Carla Northrop participated in the scheme during this time do not mention her.[12] Accordingly, the Baehrs have not asserted a claim against Carla Northrop.

The Plaintiffs contend that the claim against Carla Northrop does not fail because other members of the proposed class purchased homes during the period of her sham employment with Lakeview. ECF No. 35 at 19. However, that members of the proposed class may have claims against Carla Northrop does not save the claim from dismissal when the Named Plaintiffs have not asserted a valid claim.[13] The Plaintiffs also argue that they stated a claim against Carla Northrop because she is Vice

---

[12] *See* ECF No. 35 at 20; Am. Compl. ¶¶ 22-23 (mentioning only Creig Northrop, The Northrop Team, Lakeview, and Eagan).

[13] *See* *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) ("[Rule 23 requirements] effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.") (internal quotation marks omitted); *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) ("The essence of the typicality requirement is captured by the notion that as goes the claim of the named plaintiff, so go the claims of the class.") (internal quotation marks omitted).

President of the Northrop Team, and therefore "played a key role in the orchestration of the illegal kickback scheme through 2012." ECF No. 35 at 19. The Plaintiffs cite *Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 577 (Md. 1995), that "officers of a corporation [are] personally liable for *torts* of the corporation in which they actively participated." However, the Plaintiffs have failed to allege that Carla Northrop participated in the violation of RESPA that occurred in 2008 when the Baehrs purchased their home. Merely being an officer of a corporation is not sufficient for individual liability. The Amended Complaint failed to cure the defects of the Plaintiffs' claim against Carla Northrop.

     3.    Failure to State a Claim Against Long & Foster

The Long & Foster Defendants argue that the Plaintiffs have failed to state a claim against Long & Foster because they have not alleged that Long & Foster participated in the kickback scheme. ECF No. 23-1 at 20. The Plaintiffs contend that Long & Foster is vicariously liable for the actions of the Northrop Team because there is an agency relationship. ECF No. 35 at 20.

"Whe[n] a plaintiff's claim is dependent upon the existence of an agency relationship, the plaintiff has the burden of proving such a relationship, including its extent." *Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 735 (D. Md. 2008). In Maryland, an agency relationship exists when: "(1)

the agent is subject to the principal's right of control; (2)
the agent has a duty to act primarily for the benefit of the
principal; and (3) the agent has the power to alter the legal
relations of the principal." *Brooks v. Euclid Systems Corp.*,
151 Md. App. 487, 506 (Md. 2003); *see also Proctor*, 579 F. Supp.
2d at 735. These factors are neither essential nor exclusive
but "should be viewed within the context of the entire
circumstances of the transaction or relations." *Green v. H & R
Block, Inc.*, 355 Md. 488, 506 (Md. 1999). Rule 9(b) requires
that when "a plaintiff is seeking to hold a defendant
vicariously liable for the [fraudulent] acts of its agents, it
must allege the factual predicate for the agency relationship
with particularity." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243,
250 (D. Md. 2000).

Here, the Plaintiffs have not sufficiently pled an agency
relationship between Long & Foster and the Northrop Defendants.
The Plaintiffs simply allege that Long & Foster is "the broker
of record of The Northrop Team," Carla Northrop, Creig Northrop,
and Eagan. Am. Compl. ¶ 12. The Amended Complaint states that
"[a]t all relevant times, Long & Foster held the Northrop
Defendants and Ms. Eagan out to the public as agents for Long &
Foster, acting within the scope of their duties for Long &
Foster." Am. Compl. ¶ 13. The Plaintiffs also allege that the
Northrop Defendants "were agents acting on behalf of Defendant

17

Long & Foster, and such acts were within the scope of the
business relationship and duties of the Northrop Defendants and
were performed on behalf of Long & Foster." Am. Compl. ¶ 12.
These allegations are merely legal conclusions which the Court
need not accept as true. *See Papasan v. Allain*, 478 U.S. 265,
286 (1986). The Amended Complaint makes no allegations about
the basis, nature, or extent of the relationship. The
Plaintiffs have not alleged a factual basis for the Court to
determine whether the three factors indicating agency are
present. Accordingly, the Plaintiffs have failed to allege an
agency relationship necessary to impose vicarious liability
against Long & Foster, and the Amended Complaint does not cure
this defect. The Plaintiffs have also not alleged that Long &
Foster violated RESPA by giving or accepting kickback fees;
therefore, they have not stated a claim against Long & Foster.

4. Failure to State a Claim Against Eagen

The Lakeview Defendants argue that the Plaintiffs failed to
state a claim against Eagan in her individual capacity because
they did not allege her "role in the scheme." ECF No. 26-1 at
2. The Plaintiffs argue that they sufficiently alleged that
Eagan actively participated in the scheme. ECF No. 35 at 23.

The Plaintiffs allege that Eagan "negotiated and signed the
sham Marketing Agreement," and "authorized the overpayments
under the guise of the sham Marketing Agreement." Am. Compl. ¶¶

19, 23.  These allegations are more than a conclusionary statement that Eagan participated in or supervised the scheme. Instead, the Plaintiffs allege that Eagan actively participated in the kickback scheme and directed Lakeview's role in the plan. Because the Plaintiffs specifically allege how Eagan played an active role in the kickback scheme, they have sufficiently stated a claim against her in the Amended Complaint.[14]

     5.   Summary

Because the Amended Complaint failed to cure the defects in the claims against Carla Northrop and Long & Foster, the motion for leave to amend will be denied as to those Defendants.  The motion will be granted as to all other Defendants.

     C.   The Defendants' Motions to Dismiss

Because the Plaintiffs have failed to state a claim against Carla Northrop and Long & Foster, *supra* Part II.B.2-3., the Long & Foster Defendants' motion to dismiss will be granted with respect to those Defendants.  Because the Amended Complaint was not futile and sufficiently stated entitlement to equitable tolling, *supra* Part II.B.1., the Long & Foster Defendants' motion will be denied as moot for all remaining Defendants.  The

---

[14] *Cf. Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 744-45 (D. Md. 2008) (plaintiffs' claims failed because they failed to allege what each defendant did to fulfill his role in the scheme).

19

Lakeview Defendants' motion to dismiss, *supra* Part II.B.4., will also be denied as moot.

D.   Motion for Class Certification

The Plaintiffs seeks to certify the following class:

> All Maryland residents who retained Long & Foster Real Estate, Inc., Creighton Northrop, III, and the Creig Northrop Team, P.C. to represent them in the purchase of a primary residence between January 1, 2000 to present and settled on the purchase of their primary residence at Lakeview Title Company, Inc.

ECF No. 44 at 1. To obtain certification, plaintiffs must demonstrate that: (1) the proposed class meets the four criteria stated in Rule 23(a); and (2) the proposed class fits into one of the three categories in 23(b). *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 215 (D. Md. 1997).

1.   Rule 23(a) Factors

Fed. R. Civ. P. 23(a) requires that: (1) the class be so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

The action also must meet one of the following requirements: (1) prosecuting separate actions would create a risk of inconsistent adjudications; (2) injunctive relief or

declaratory relief is appropriate respecting the class as a
whole because the defendant's act or failure to act applies
generally to the class as a whole; or (3) common questions of
law or fact predominate over any individual questions and a
class action is a superior method to adjudicating the
controversy. Fed. R. Civ. Pro. 23(b). The burden of
establishing class status is on the plaintiff. *Int'l
Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d
1259, 1267 (4th Cir. 1981).

a. Numerosity

Numerosity is satisfied when the class is "so numerous that
joinder of all members is impracticable." *Brady v. Thurston
Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984). No specified
number is needed to maintain a class action. *Id.* The
practicality of joinder depends on several factors, including:
(1) the size of class, (2) ease of identifying and serving its
members, (3) their geographic dispersion, and (4) whether
individual claims are so small as to inhibit a class member from
pursuing his own interest. *Hewlett*, 185 F.R.D. at 215. "A
class consisting of as few as 25 to 30 members raises the
presumption that joinder would be impractical." *Dameron v.
Sinai Hosp. of Balt., Inc.*, 595 F. Supp. 1404, 1408 (D. Md.
1984). Here, the Plaintiffs estimate that the proposed class
includes 3,000 to 4,000 persons. *See* Am. Compl. ¶ 39. The

Defendants do not dispute that the Plaintiffs' proposed class meets the numerosity requirement. Accordingly, the proposed class size is sufficient to render joinder impractical.

### b.   Commonality

Rule 23(a)(2) requires common questions of law or fact among the members of the class. Fed. R. Civ. P. 23(a)(2). Commonality is present if the class members share a single common issue or law or fact. *See Benway v. Resource Real Estate Servs., LLC*, 239 F.R.D. 419, 424 (D. Md. 2006). This requirement is not onerous. "Minor difference in the underlying facts of individual class members' cases do not defeat a showing of commonality where there are common questions of law." *Hewlett*, 185 F.R.D. at 216. In this case, there are factual and legal issues common to the proposed class members. The action is based on whether the Defendants violated RESPA by engaging in an illegal referral fee scheme during the time when class members used the Defendants' services to purchase and settle on a primary residence. Because the claims of the proposed class members rest on the same legal issues and similar facts, the class has met the low threshold for commonality.

### c.   Typicality

Under Rule 23(a)(3), the plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defense of the class." Fed. R. Civ. P. 23(a)(3).

22

The claims asserted by the named plaintiffs and the class claims "must be so interrelated that the interests of the class members will be fairly and adequately protected." *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (internal quotation marks omitted). A representative's claims and the claims of the other members of the class "need not be perfectly identical or perfectly aligned." *Ealy v. Pinkerson Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013) (internal quotation marks omitted). The named plaintiffs' claim "may differ factually and still be typical if it arises from the same event or practice or court of conduct that gives rise to the claims of other class members, or if [their] claims are based on the same legal theory." *Hewlett*, 185 F.R.D. at 217 (internal quotation marks omitted).

The Defendants argue that the Named Plaintiffs do not meet the typicality requirements for those members of the class with timely claims, and those members with claims arising between 2000 and 2007. ECF No. 47 at 20. The Plaintiffs argue that the proposed members of the class "were all victims of the identical scheme at the hands of the same Defendants." ECF No. 44-1 at 14. The Plaintiffs argue that the different methods the Defendants used to conceal the scheme are immaterial factual differences. *Id.* at 15.

First, the Named Plaintiffs' claims are not typical of
those members of the proposed class who purchased homes from
2000 to 2007 when the Defendants were allegedly operating their
kickback scheme under the sham employment agreement with Carla
Northrop. As discussed above, *supra* Part II.B.2., the Named
Plaintiffs have failed to state a claim against Carla Northrop,
while those members of the class who purchased homes earlier
have claims against her. The Named Plaintiffs purchased their
home while Lakeview was allegedly funneling referral fees
through a marketing agreement to Creig Northrop and the Northrop
Team, meaning they have little incentive to present evidence
that Lakeview and Carla Northrop entered into a sham employment
agreement years earlier. It is possible that one of the
agreements will be found to be legitimate, while the other is
not.

That the Defendants provided the same ABA Disclosures
during this period does not resolve the problem that the alleged
kickback scheme would have to be proved with significantly
different facts under the fake employment and marketing
agreements. Because the representatives' facts are markedly
different from the members of the class who purchased homes from
2000 to 2007, the Named Plaintiffs are not typical of those
class members, even though some common issues of law and fact
are present. *See Benway*, 239 F.R.D. 419, 423. Accordingly, the

24

Court will exercise its discretion to redefine the Plaintiffs' proposed class to include only those class members who purchased homes beginning in 2008.[15]

That the Named Plaintiffs had to prove equitable tolling, does not alone make the class representatives atypical of those members of the class with timely claims.[16] The underlying facts of the claims of the Named Plaintiffs and of those members of the redefined class with timely claims are the same. They involve the same actors, disclosures, and sham Marketing Agreement. Accordingly, the Named Plaintiffs' claims are typical of those of the redefined class.

d. Adequacy of Representation

Rule 23(a)(4) requires that the named plaintiffs and counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if: (1) the named plaintiffs' interests are not opposed to those of other class members, and (2) the plaintiffs' attorneys are qualified, experienced and able to conduct the litigation.

---

[15] *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006) (district courts have broad discretion in class certification within the framework of Rule 23).

[16] *Cf. Minter v. Wells Fargo Bank, N.A.*, 274 F.R.D. 525, 548-49 (D. Md. 2011) (finding the named plaintiffs to be atypical of the class member whose claims required equitable tolling because the named plaintiffs' claims were timely, and the operations of the defendant were different during that time).

*Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 558 (D. Md. 2006).

The Defendants argue that the Plaintiffs have failed to meet their burden of proof that proposed counsel is qualified and adequate. ECF No. 47 at 24. The Defendants contend that the Plaintiffs have failed to allege that counsel has federal, class action, or RESPA litigation experience. ECF No. 24 at 17. However, absent contrary proof, class counsel are presumed competent and sufficiently experienced to prosecute the action on behalf of the class. *Hewless v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 218 (D. Md. 1997). The Defendants' only proof of counsel's inadequacy is plaintiffs' counsel's loss in a similar state case, *Larocca, et al. v. Creig Northrop Team P.C., et al.*, No. 13-C-11089075 (Howard Cnty. Cir. Ct. 2013), against the defendants. ECF No. 47 at 24. An unsuccessful outcome in prior litigation does not raise serious questions about the adequacy of Plaintiffs' counsel.[17] The Plaintiffs have presented evidence that counsel is capable of handling class action and other complex litigation,[18] and none of the Defendants' evidence

---

[17] Additionally, the Court in *Larocca,* No. 13-C-11089075, found plaintiffs' counsel to be adequate. ECF No. 53, Ex. 13 (The Court stated "I have not issues with the -- appropriateness of representation. I really don't.").

[18] *See* ECF No. 44-1 at 17-18.

suggests that counsel would not adequately represent the class.
There is adequate representation.

        2.    Rule 23(b)

Under Rule 23(b)(3), certification is proper when "the
questions of law or fact common to class members predominate
over any questions affecting only individual members," and, to
resolve the case, "a class action is superior to other available
methods." Fed. R. Civ. P. 23(b)(3).

        a.   Predominance

The Defendants argue that common questions of law or fact
will not predominate because the Plaintiffs cannot establish
equitable tolling on a class-wide basis. ECF No. 47. Although
some individualized inquiry may be necessary to determine due
diligence or whether a class member was aware of his potential
claim before the limitations ran, the common issues predominate
over those inquiries. Whether the Defendants violated RESPA by
engaging in a referral fee kickback scheme, and actively
concealed their scheme through a sham Marketing Agreement and
uniform ABA Disclosures, are predominate issues common to all
members of the redefined class. Much of the Defendants'
arguments against predominance go to the merits of the
Plaintiffs' equitable tolling claims.[19] Thus, these arguments

---

[19] *See* ECF No. 47 at 28-30, 34.

27

are not dispositive of the issue of class certification.[20] The

Plaintiffs allege that the Defendants operated in the same

manner with all class members, used uniform documents, and

referral fees were paid and concealed under the same fake

Marketing Agreement.[21]

The Defendants also argue that individualized

determinations of damages prevent predominance. ECF No. 47 at

36. Generally "individualized inquiries into damages and other

minor questions of law do not defeat predominance." *Minter v.

Wells Fargo Bank, N.A.*, 274 F.R.D. 525, 550 (D. Md. 2011). The

Defendants argue that individualized inquiries are necessary

because they have the right to prove that marketing services

were provided at the time of an individual class member's

closing. *See* ECF No. 47 at 36.

However, the Plaintiffs do not allege that The Northrop

Group provided services in some transactions and not others

under the Marketing Agreement with Lakeview; rather, the

---

[20] *See Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
133 S. Ct. 1184, 1194-95 (2013) ("Merit questions may be
considered to the extent -- but only to the extent -- that they
are relevant to determining whether Rule 23 prerequisites for
class certification are satisfied.").

[21] *Compare Benway*, 239 F.R.D. at 426-27 (predominance requirement
satisfied when plaintiffs alleged that the defendants violated
RESPA through the same manner of operations with all customers
and used identical, standardized documents), *with Broussard v.
Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 343
(district court improperly certified class when plaintiffs
asserted claims based on differing contracts).

28

Plaintiffs allege that the Marketing Agreement was entirely a
sham arrangement used to conceal illegal referral fees unrelated
to individual transactions. *See* Am. Compl. ¶¶ 20-24. Thus,
whether the Marketing Agreement is a legitimate services
agreement will be the common question, and individualized
determinations regarding the services provided for each closing
will be unnecessary.

b.   Superiority

Rule 23(b)(3) provides four factors to consider when
determining whether a class action is superior to other
adjudication: (1) the interests of the members of the class in
individually controlling the prosecution of separate actions;
(2) the extent and nature of other pending litigation about the
controversy by members of the class; (3) the desirability of
concentrating the litigation in a particular forum; and (4) the
difficulties likely to be encountered in management of the class
action.   Fed. R. Civ. P. 23(b)(3).

The Defendants rely on *Minter v. Wells Fargo Bank, N.A.*,
No. WMN-07-3442, 2013 WL 1795564 (D. Md. April 26, 2013), to
argue that equitable tolling renders this case unmanageable as a
class action.   ECF No. 47 at 25.   In *Minter*, the Court
decertified a class subject to equitable tolling because proving
tolling became unmanageable.   *Minter*, 2013 WL 1795564, at *4.
There, the Plaintiffs relied on the violations of RESPA itself

29

for equitable tolling, requiring inquiries into the transactions of individual class members. *Id.* Here, the Plaintiffs allege a violation of RESPA based on the exchange of illegal referral fees, separate from the alleged acts of concealment involving the creation of a sham Marketing Agreement and an agreement to conceal the arrangements from ABA Disclosures. The Plaintiffs' equitable tolling claims rely on uniform facts that do not require an individualized inquiry into each class member's transaction. Accordingly, equitable tolling does not render the case unmanageable.

The other Rule 23(b)(3) factors also support a class action as the superior method of litigation. As discussed above, *supra* Part II.D.1.c., the Named Plaintiffs' claims align with the members of the redefined class. The Defendants have not indicated that there is any other pending RESPA litigation by members of this class. Allowing the Plaintiffs to proceed as a class provides access to the courts to class members who would not have an incentive to pursue their relatively small individual claims.[22]

---

[22] *See Minter v. Wells Fargo Bank, N.A.*, 279 F.R.D. 320, 330 (D. Md. 2012); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 426 (4th Cir. 2003).

### 3. Summary

The Court will certify the following amended definition of the Plaintiffs' proposed class:

All Maryland residents who retained Long & Foster Real Estate, Inc., Creighton Northrop, III, and the Creig Northrop Team, P.C. to represent them in the purchase of a primary residence between January 1, 2008 to the present and settled on the purchase of their primary residence at Lakeview Title Company, Inc.

### E. Motion to Strike Reply

The Long & Foster Defendants move to strike the Plaintiffs' reply in support of the Plaintiffs' motion for class certification (ECF No. 53). ECF No. 54 at 1. The Long & Foster Defendants argue that the reply "should be stricken to the extent it relies on evidence and exhibits Plaintiffs chose not to include in their original Motion to Certify." *Id.* at 2.

Fed. R. Civ. P. 12(f) provides that "[t]he court may strike *from a pleading* an insufficient defense or any redundant immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Pleadings are defined in Rule 7(a) and include a complaint, an answer to a complaint, an answer to a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and a reply to an answer if the court orders one. Fed. R. Civ. P. 7(a). As the reply the Long & Foster Defendants seek to strike is not a pleading under Rule 7(a), their motion to strike will be denied.

F.    Leave to File a Surreply

In their motion to strike, the Long & Foster Defendants
alternatively seek leave to file a surreply to the Plaintiffs'
reply in support of the Plaintiffs' motion for class
certification (ECF No. 53).  ECF No. 54 at 1-2.

Unless otherwise ordered by the Court, a party generally
may not file a surreply.  Local Rule 105.2(a).  Leave to file a
surreply may be granted when the movant otherwise would be
unable to contest matters presented for the first time in the
opposing party's reply.  *Khoury v. Meserve*, 268 F. Supp. 2d 600,
605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

The Long & Foster Defendants contend that they should be
permitted to file a surreply because "further argument is
required to address the newly raised assertions in the
Plaintiffs' Reply."  ECF No. 54 at 2.  The proposed surreply
reiterates many of the arguments the Long & Foster Defendants
made in their opposition and seeks to interpret cases introduced
by the Plaintiffs in their Reply.  These are insufficient
grounds for surreply.  The proposed surreply also seeks to
address evidence from a related state court case that the Long &
Foster Defendants argue was raised for the first time in the
Plaintiffs' Reply.  ECF No. 54, Ex. A, at 2.  That evidence
included references to the deposition testimony of Carla and
Creig Northrop that relates to issues raised in the initial

motion.[23]  Because the Plaintiffs have not introduced new matters
which the Defendants have been unable to contest, the motion to
file a surreply will be denied.

III. Conclusion

For the reasons stated above, the Long & Foster Defendants'
motion to dismiss will be granted in part and denied in part as
moot.  The Lakeview Defendants' motion to dismiss will be denied
as moot.  The Plaintiffs' motion for leave to file an amended
complaint will be granted in part and denied in part.  The
Plaintiffs' motion to certify a class will be granted as amended
by the Court.  The Long & Foster Defendants' motion to strike,
or in the alternative, motion for leave to file surreply will be
denied.

1/28/14

Date

William D. Quarles, Jr.
United States District Judge

---

[23] The referenced deposition testimony in the Reply was used in
the Amended Complaint and the Plaintiffs' motion for class
certification.  See Am. Compl.; ECF No. 44-1 at 3-7.