IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

PATRICK BAEHR, *et al.*,                         *

    Plaintiffs,                          *

        v.                             *

THE CREIG NORTHROP TEAM, P.C.,          *   CIVIL NO.: WDQ-13-0933
*et al.*,                                        *

    Defendants.                          *

  *    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Patrick Baehr and Christian Baehr ("the Named Plaintiffs"),

on behalf of themselves and others similarly situated

(collectively, "the Plaintiffs"), sued Long & Foster Real

Estate, Inc. ("Long & Foster"), The Creig Northrop Team, P.C.

("The Northrop Team"), Creighton E. Northrop, III ("Creig

Northrop"), Carla Northrop, Lakeview Title Company, Inc.

("Lakeview"), and Lindell C. Eagan, (collectively "the

Defendants"),[1] for violating the Real Estate Settlement

Procedures Act ("RESPA").[2]  Pending are several motions.  For the

---

[1] For ease of reference, Long & Foster, The Northrop Team, Creig
Northrop, and Carla Northrop will be referred to collectively as
"The Long & Foster Defendants."  That same group, without Long &
Foster, will be referred to collectively as "The Northrop
Defendants."  Lakeview and Eagan will be referred to
collectively as "The Lakeview Defendants."

[2] 12 U.S.C. §§ 2601 *et seq.*

following reasons, the Long & Foster Defendants' motion for leave to file a surreply will be denied.  The Plaintiffs' motion to alter or amend judgment, and motion for leave to file a second amended complaint will also be denied.

I.    Background[3]

   A.   Factual Background

This case arises out of an alleged 13 year scheme for real estate agents[4] to receive over half a million dollars in illegal kickbacks from a title insurance service[5] for referrals.  ECF No.

_____

[3] The facts are from the second amended complaint.  ECF No. 65-3. A motion to amend pleadings that may be futile is treated as if the opposing party has moved to dismiss.  *See United States ex. rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).  For a motion to dismiss, the well-pled allegations in the complaint are accepted as true.  *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  A court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" in deciding the futility of a motion to amend.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[4] Long & Foster is the real estate broker for Creig Northrop, Carla Northrop, and The Northrop Team.  *See* Am. Compl. ¶¶ 11, 12.  Long & Foster is a Virginia corporation registered to do business in Maryland.  *Id.* ¶ 6.  The Northrop Team is a Maryland corporation with its principal place of business in Howard County.  *Id.* ¶ 3.  Creig Northrop is a resident of Howard County, the President of the Northrop Team, and "a salesperson for Long & Foster."  *Id.* ¶ 4.  Carla Northrop is a resident of Howard County, the Vice President of the Northrop Team, and "a salesperson for Long & Foster."  *Id.* ¶ 5.

[5] Lakeview is a Maryland corporation that provides title services, and Eagan is the President and part owner of Lakeview.  *See* Am. Compl. ¶¶ 7, 8.

65-4 ¶ 1.   Specifically, the Northrop Defendants referred the Plaintiffs and members of the Class exclusively to Lakeview for real estate settlement services as a *quid pro quo* for compensation by the Lakeview Defendants.  *Id.* ¶ 28.   The Defendants used a "sham employment agreement and a sham Marketing Agreement" to "generate unearned fees and kickbacks." *Id.* ¶ 1.

<blockquote>1.   Relationship Between Long & Foster and the Northrop Team</blockquote>

Creig Northrop, members of the Northrop Team, and Eagan are "real estate salespersons or associate real estate brokers who are affiliated with and under the authority to act on behalf of their broker, Defendant Long & Foster."  ECF No. 65-3 ¶ 13.   The license of every person on the Northrop Team, including Creig Northrop and Eagan, lists Long & Foster as their affiliated broker.  *Id.*   "At all relevant times, Northrop Defendants prepared and entered into Buyer Brokerage Agreements and Exclusive Listing Agreements with Plaintiffs and class members at Long & Foster's direction and on behalf of Long & Foster." *Id.* ¶ 14.   The agreements identified Long & Foster as the contracting party.  *Id.*   Long & Foster received direct compensation from these agreements.  *Id.* ¶ 15.

At all relevant times, "Long & Foster exercised supervision over the daily conduct of the Northrop Defendants" by employing

Ona Beares as the branch manager for the Northrop Team at the Northrop Team's offices.  ECF No. 65-4 ¶¶ 16-17.  Beares is an employee of Long & Foster and supervises the daily business activities of the Northrop Team.  *Id.* ¶ 17.  Beares's duties include but are not limited to, the following:  (1) reviewing "each contract of sale and listing agreement to ensure compliance with Long & Foster's policies and procedures"; (2) reviewing "all marketing and advertising materials, including those that reference Lakeview Title, to ensure compliance with Long & Foster and regulatory standards prior to their use or publication"; (3) approving "all disbursement of commission compensation prior to their distribution to the Northrop Team and its employees"; and (4) holding "regular office-wide meetings with the Northrop Defendants for purposes of implementing Long & Foster policies, procedures, and initiatives."  *Id.* ¶ 18.

At all relevant times, the Northrop Defendants "were under a contractual agency relationship with Defendant Long & Foster to act on behalf of Long & Foster as the agent of Long & Foster in their dealings with the Plaintiffs and Class Members."  ECF No. 65-4 ¶ 19.  Long & Foster "has a legal duty to exercise reasonable and adequate supervision over the conduct of any salesperson or associate broker affiliated with their brokerage in the provision of real estate brokerage services."  *Id.* ¶ 20.

Long & Foster held the Northrop Defendants and Eagan "out to the public as agents for Long & Foster, acting within the scope of their duties for Long & Foster." *Id.* ¶ 21. "Long & Foster holds the Northrop Defendants out to the public as affiliates of Long & Foster." *Id.* ¶ 22.

Long & Foster procedures require the Northrop Team to refer to itself as "The Creig Northrop Team of Long & Foster Real Estate, Inc." in all advertisements, marketing materials, and "for sale" signs. ECF No. 65-4 ¶ 22. "Many of the documents provided to the Plaintiffs and Class Members by the Northrop Defendants contained Long & Foster's name and logos, and certain agreements, such as the Buyer Brokerage Agreements, indicated that the Plaintiffs and Class Members were contracting with Long & Foster." *Id.* ¶ 23. Disclosure documents provided to the Plaintiffs by the Northrop Defendants indicated that the Northrop Defendants were acting "on behalf and for the benefit of" Long & Foster. *Id.* "All documents indicated that the plaintiffs were contract[ing] with Long & Foster through the Northrop Defendants." *Id.* ¶ 24. The Plaintiffs "reasonably believed that they were contracting with Long & Foster, and in part based their decision to contract with the Northrop Defendants" on Long & Foster's reputation. ECF No. 65-4 ¶ 25. Long & Foster "had a legal duty to exercise reasonable and adequate supervision over the conduct" of Creig Northrop, the

Northrop Team, and Eagan as affiliated agents of Long & Foster.
*Id.* ¶ 27.

2.    The Named Plaintiffs' Home Purchase

In June 2008, the Named Plaintiffs hired Long & Foster,
Creig Northrop, and the Northrop Team to represent them in
buying a new home. *See* ECF No. 65-4 ¶ 42.  They referred the
Named Plaintiffs to Lakeview for title and settlement services.
*Id.* ¶ 43.  Based on this recommendation, the Named Plaintiffs
used Lakeview in the purchase of their home.  *Id.*  On July 25,
2008, the Named Plaintiffs closed on their home.  *Id.*

3.    Alleged Kickback Scheme

"[T]o conceal" their illegal referral fee agreement, the
Defendants "devised two separate sham arrangements."  ECF No.
65-4 ¶ 29.  From 2000 through 2007, the Defendants created a
"sham employment arrangement" between Lakeview and Carla
Northrop, "to disguise payments of illegal referral fees."  *Id.*
¶ 30.  From 2000, Carla Northrop was a full-time employee of the
Northrop Team.  *Id.* ¶ 31.  She "was also secretly receiving
payments from Lakeview" under an employment agreement, even
though she "did not perform any actual work or services for
Lakeview."  *Id.*  Carla Northrop did not appear for work at
Lakeview, and she did not conduct any closings or process any
files for Lakeview.  *Id.*  Lakeview did not provide her with an
office, telephone number, or email address.  *Id.*  The Defendants

"concealed" Carla Northrop's "supposed employment at Lakeview from the public."[6]  Her employment with Lakeview was never disclosed to the Named Plaintiffs or others similarly situated. *See* ECF No. 65-4 ¶ 32.

In 2008, Lakeview stopped paying Carla Northrop.  *See* ECF No. 65-4 ¶ 33.  Instead, Lakeview "began funneling the illegal kickbacks for referrals through a sham 'Marketing Agreement'" with Creig Northrop and The Northrop Team.  *Id.*  Creig Northrop and Eagan negotiated and signed the Marketing Agreement on behalf of the Northrop Team and Lakeview.  *Id.*  The Marketing Agreement provided that Creig Northrop and the Northrop Team would designate Lakeview as their exclusive settlement and title company and would "provide mostly unspecified 'marketing services.'"  *Id.* ¶ 34.  The Marketing Agreement also provided that Creig Northrop and the Northrop Team would not endorse any other settlement and title insurance companies, and they would "use their reasonable effort to cause its affiliates and their respective partners, stockholders, and senior officials" not to endorse any other company.  *Id.* ¶ 35.

---

[6] *See* ECF No. 65-4 ¶ 32.  The Northrop team website did not mention her employment at Lakeview, her employment was not referenced in the Northrop Team client packet, and Lakeview's website did not list her as an employee.  *Id.*  Other employees of the Northrop Team and Long & Foster were unaware of her employment with Lakeview.  *Id.*

Under the Marketing Agreement, Lakeview agreed to pay Creig Northrop and the Northrop Team $6,000.00 per month for marketing services. *See* ECF No. 65-4 ¶ 36. Lakeview actually paid as much as $12,000 per month. *Id.* Eagan "authorized the overpayments under the guise of the sham Marketing Agreement." *Id.* Creig Northrop and the Northrop Team received over $500,000 under the Marketing Agreement. *Id.* There is no record of "any real joint marketing services reasonably related to actual amounts paid by Lakeview." *Id.* ¶ 37.

The relationship between Lakeview and the Northrop Defendants "was never disclosed to, and actively concealed from" Northrop's clients. *See* ECF No. 65-4 ¶ 38. At every settlement Lakeview presented Affiliated Business Arrangement ("ABA") Disclosures prepared by Long & Foster. *Id.* The ABA Disclosure form stated:

> This is to give you notice that Long & Foster Real Estate, Inc. ("Long & Foster") has business relationship (e.g., direct or indirect ownership interest, joint ventures and/or contractual relationships including marketing agreements and/or office leases) with the following mortgage, title, closing, and insurance service providers . . . As a result of these relationships referrals to any of the above-listed entities may provide Long & Foster (and/or any of its subsidiaries or affiliates) with a financial or other benefit.

*Id.* The ABA Disclosure included several title companies, but it did not include Lakeview. *Id.* Class members "reasonably relied" that the disclosure "included the title

companies that Long & Foster, or its affiliates (including the Northrop Team) had a financial relationship with." *Id.*

B.    Procedural History

On March 27, 2013, the Named Plaintiffs, on behalf of themselves and others similarly situated, sued the Defendants for violating RESPA.  ECF No. 1.  On May 13, 2013, the Defendants moved to dismiss.  ECF Nos. 23, 26.  On July 3, 2013, the Plaintiffs opposed the motion, and moved for leave to file an amended complaint.  ECF Nos. 35, 36.  On July 22, 2013, the Defendants opposed the motion to amend the complaint.  ECF Nos. 37, 39.  On July 22, 2013, the Lakeview Defendants replied to the Plaintiffs' opposition.  ECF No. 40.  On July 23, 2013, the Long & Foster Defendants also replied.  ECF No. 42.  On August 8, 2013, the Plaintiffs replied in support of their motion to amend.  ECF No. 43.

On August 14, 2013, the Plaintiffs moved to certify the class.  ECF No. 44.  On September 27, 2013, the Long & Foster Defendants opposed the motion.  ECF No. 47.  On September 30, 2013, the Lakeview Defendants also opposed the motion to certify.  ECF No. 50.  On October 29, 2013, the Plaintiffs replied.  ECF No. 53.  On November 19, 2013, the Long & Foster Defendants moved to strike the Plaintiffs' reply, or in the alternative, moved for leave to file surreply.  ECF No. 54.  On December 6, 2013, the Plaintiffs opposed the motion to strike.

ECF No. 55.  On December 6, 2013, the Plaintiffs also filed a

supplement to their reply.  ECF No. 56.

On January 29, the Court issued a memorandum opinion and

order denying the Plaintiffs' motion to file an amended

complaint as to the claims against Carla Northrop and Long &

Foster for futility.  *See* ECF Nos. 57, 58.  The Court granted

the motion to amend as to all other Defendants.  *Id.* The Court

granted the Long & Foster Defendants' motion to dismiss as to

Carla Northrop and Long & Foster, and denied the motion as moot

as to all other defendants.  *Id.*  The Court denied as moot the

Lakeview Defendants' motion to dismiss.  *Id.*  The Court granted

the Plaintiffs' motion to certify a class, as amended by the

Court.  *Id.*  The Court certified a class consisting of:

> All Maryland residents who retained Long & Foster Real
> Estate, Inc., Creighton Northrop, III, and the Creig
> Northrop Team, P.C. to represent them in the purchase
> of a primary residence between January 1, 2008 to the
> present and settled on the purchase of their primary
> residence at Lakeview Title Company, Inc.

*Id.*  The Court denied the Long & Foster Defendants' motion to

strike.  *Id.*

On February 13, 2014, the Plaintiffs moved for leave to

file a second amended complaint and to alter or amend the

judgment.  ECF Nos. 65, 66.  On March 3, 2014, the Long & Foster

Defendants opposed the motion.  ECF No. 71.  On March 20, 2014,

the Plaintiffs replied.  ECF No. 74.  On March 26, 2014, the

Long & Foster Defendants moved for leave to file a surreply. ECF No. 75. On April 9, 2014, the Plaintiffs opposed the motion to file a surreply. ECF No. 76. On April 14, 2014, the Long & Foster Defendants replied. ECF No. 77.

II. Analysis

    A.    The Plaintiffs' Motion to Amend Judgment and Motion for Leave to File a Second Amended Complaint

The Plaintiffs seek to amend the Court's dismissal of the claim against Long & Foster to be without prejudice, and seek to amend their complaint to add specific factual allegations to establish an agency relationship between Long & Foster and the Northrop Defendants. *See* ECF No. 66-1 at 1; ECF No. 65-1 at 1.

    1.    Legal Standards

The Plaintiffs bring their motion to alter or amend judgment under Fed. R. Civ. P. 59(e). ECF No. 66-1 at 1. Under Rule 59(e), the Court may grant a motion to alter or amend the judgment to: (1) accommodate an intervening change in controlling law; (2) account for new evidence previously unavailable; or (3) correct a clear error of law or prevent manifest injustice. *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008). "It is an extraordinary remedy that should be applied sparingly." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012). Rule 59(e) may not be used to

11

reargue points that could have been made before judgment was entered. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008); *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002).

The Plaintiffs also seek leave to file a second amended complaint. ECF No. 65-1 at 1. "[A] district court may not grant a post-judgment motion to amend the complaint unless the court first vacates its judgment pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 470 (4th Cir. 2011). "The court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a)." *Id.* at 471. In other words, "Rule 15(a) and Rule 59(e) motions rise and fall together." *Mayfield*, 674 F.3d at 378.

Under Fed. R. Civ. P. 15(a)(2), a party may amend its complaint with its opponent's written consent or with leave of court. The Court "should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Thus, "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (internal citation and quotation marks omitted). An amendment is futile if it would

fail to withstand a motion to dismiss.  *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

An action may be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced.  *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).  These facts must be sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557).  The complaint must

not only allege but also "show" that the plaintiff is entitled
to relief.  *Id.* at 679 (internal quotation marks omitted).
"Whe[n] the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged—but it has not shown—that the pleader is entitled to
relief."  *Id.* (internal quotation marks and alteration omitted).

Rule 9(b) requires that "the circumstances constituting
fraud be stated with particularity."  Fed. R. Civ. P. 9(b).  The
rule "does not require the elucidation of every detail of the
alleged fraud, but does require more than a bare assertion that
such a cause of action exists."  *Kerby v. Mortg. Funding Corp.*,
992 F. Supp. 787, 799 (D. Md. 1998).  To satisfy the rule, a
plaintiff must "identify with some precision the date, place,
and time of active misrepresentations or the circumstances of
active concealments, specifying which Defendant . . . is
supposedly responsible for those statements or omissions."
*Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007).  The
requirements of Rule 9(b) apply to allegations of fraudulent
concealment.[7]

---

[7] When fraudulent concealment involves omissions of material
fact, Rule 9(b)'s particularity requirements are relaxed.  *See*
*Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 538 (D. Md. 2011);
*Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814,
822-23 (D. Md. 2005).

2.    Proposed Second Amended Complaint

The Plaintiffs seek to add a number of allegations in an effort to demonstrate an agency relationship between Long & Foster and the Northrop Defendants.  ECF No. 65-1 at 1.  The Long & Foster Defendants argue that the Plaintiffs' proposed amendments are futile because they fail to state a claim against Long & Foster.  ECF No. 71 at 4.

"Whe[n] a plaintiff's claim is dependent upon the existence of an agency relationship, the plaintiff has the burden of proving such a relationship, including its extent."  *Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 735 (D. Md. 2008).  In Maryland, an agency relationship exists when: "(1) the agent is subject to the principal's right of control; (2) the agent has a duty to act primarily for the benefit of the principal; and (3) the agent has the power to alter the legal relations of the principal."  *Brooks v. Euclid Systems Corp.*, 151 Md. App. 487, 506 (Md. 2003); *see also Proctor*, 579 F. Supp. 2d at 735.  These factors are neither essential nor exclusive but "should be viewed within the context of the entire circumstances of the transaction or relations."  *Green v. H & R Block, Inc.*, 355 Md. 488, 506 (Md. 1999).  An intention to create an agency relationship may be express, or implied by the words and conduct of the parties.  *See Proctor*, 579 F. Supp. 2d at 737.  Rule 9(b) requires that when "a plaintiff is seeking to

hold a defendant vicariously liable for the [fraudulent] acts of its agents, it must allege the factual predicate for the agency relationship with particularity." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000).

Many of the Plaintiffs' newly proposed allegations are legal conclusions which the Court need not accept as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). For example, the Plaintiffs allege that Long & Foster "has a legal duty to exercise reasonable and adequate supervision over the conduct of any salesperson or associate broker affiliated with their brokerage in the provision of real estate brokerage services." ECF No. 65-4 ¶ 20.

Other proposed additions allege that the Northrop Defendants were acting as the agents of Long & Foster in providing real estate services. For example, "[a]t all relevant times, Northrop Defendants prepared and entered into Buyer Brokerage Agreements and Exclusive Listing Agreements with Plaintiffs and class members at Long & Foster's direction and on behalf of Long & Foster." ECF No. 65-4 ¶ 14. However, the Plaintiffs must also allege that the Northrop Defendants were acting in the scope of the alleged agency relationship. *See Proctor*, 579 F. Supp. 2d at 737. Although the Plaintiffs allege that the Northrop Defendants are the agents of Long & Foster with respect to real estate brokerage services, under Maryland

law, real estate brokerage services do not include referring

title services or entering into third-party marketing

agreements.[8]

The remainder of the proposed additions detail the duties

of Beares, a Long & Foster employee, the branch manager and

supervisor of the Northrop Team. *See* ECF No. 65-4 ¶¶ 16-17.

Beares's duties include but are not limited to, the following:

(1) reviewing "each contract of sale and listing agreement to

ensure compliance with Long & Foster's policies and procedures";

(2) reviewing "all marketing and advertising materials,

---

[8] Providing real estate brokerage services means to engage in any
of the following activities:

    (1) for consideration, providing any of the following
    services for another person:
        (i) selling, buying, exchanging, or leasing any
        real estate; or
        (ii) collecting rent for the use of any real
        estate;
    (2) for consideration, assisting another person to
    locate or obtain for purchase or lease any residential
    real estate;
    (3) engaging regularly in a business of dealing in
    real estate or leases or options on real estate;
    (4) engaging in a business the primary purpose of
    which is promoting the sale of real estate through a
    listing in a publication issued primarily for the
    promotion of real estate sales;
    (5) engaging in a business that subdivides land that
    is located in any state and sells the divided lots; or
    (6) for consideration, serving as a consultant
    regarding any activity set forth in items (1) through
    (5) of this subsection.

*See* Md. Code Ann., Bus. Occ. & Prof. § 17-101(l).

including those that reference Lakeview Title, to ensure
compliance with Long & Foster and regulatory standards prior to
their use or publication"; (3) approving "all disbursement of
commission compensation prior to their distribution to the
Northrop Team and its employees"; and (4) holding "regular
office-wide meetings with the Northrop Defendants for purposes
of implementing Long & Foster policies, procedures, and
initiatives."  *Id.* ¶ 18.  These duties involve the supervision
of the Northrop Team in the execution of the real estate
brokerage services.  The Plaintiffs have not sufficiently pled
that the Northrop Defendants were acting in the scope of an
agency relationship with Long & Foster when they received
illegal kickbacks from a title services agency for referrals.

Accordingly, the Plaintiffs' proposed amendments are
futile; thus, their motion for leave to file a second amended
complaint will be denied.  Because the Plaintiffs' motion to
amend fails, and they have provided no other basis to alter or
amend the judgment under Rule 59(e), the Plaintiffs' motion to
alter or amend the judgment will also be denied.  *See Mayfield*,
674 F.3d at 378.

B.    Long & Foster Defendants' Motion to File Surreply

The Long & Foster Defendants seek to file a surreply to
"respond to new issues" raised by the Plaintiffs in their reply.
*See* ECF No. 75 at 1.  The Long & Foster Defendants argue that

the Plaintiffs, for the first time in their reply, cited *Lewis v. Long & Foster Real Estate, Inc.*, 85 Md. App. 754 (1991) to argue that referrals to a title company are within the scope of a real estate salesperson's "fiduciary duty" to buyers.  *See* ECF No. 75 at 3.

Unless otherwise ordered by the Court, a party generally may not file a surreply.  Local Rule 105.2(a).  Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented for the first time in the opposing party's reply.  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

The Plaintiffs did not raise a new matter that the Long & Foster Defendants are unable to contest.  The Long & Foster Defendants raised in their opposition the argument that the Northrop Defendants' actions in making an agreement with Lakeview for title referral services was not within the scope of an agency relationship.  *See* ECF No. 71 at 8-9.  The Plaintiffs cited *Lewis* in arguing that the referral of class members to Lakeview for title services was within the scope of the Northrop Defendants' duties as Long & Foster's agents.  *See* ECF No. 74 at 5.  The Long & Foster Defendants' desire to interpret a case introduced by the Plaintiffs in their Reply is an insufficient

ground for a surreply.[9]  Accordingly, the Long & Foster

Defendants' motion for leave to file a surreply will be denied.

III. Conclusion

For the reasons stated above, The Long & Foster Defendants'

motion for leave to file a surreply will be denied.  The

Plaintiffs' motion to alter or amend judgment, and motion for

leave to file a second amended complaint will be denied.


_____7/24/14_____                         _____
Date                                         William D. Quarles, Jr.
                                             United States District Judge

---

[9] *See TECH USA, Inc. v. Evans*, 529 F. Supp. 2d 853, 862 (D. Md.
2009) (holding that there is no basis to permit a plaintiff to
file a surreply if a defendant does not raise new legal issues
or new theories in its reply brief).

20