IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                               *
PATRICK BAEHR, et al.,
                               *
      Plaintiffs,
                               *
          v.
                               *   CIVIL NO.: WDQ-13-0933
THE CREIG NORTHROP TEAM, P.C.,
et al.,                        *

      Defendants.              *
```

   *     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OPINION

Patrick Baehr and Christine Baehr ("the Named Plaintiffs"),
on behalf of themselves and others similarly situated
(collectively, "the Plaintiffs"), sued Long & Foster Real
Estate, Inc. ("Long & Foster"), The Creig Northrop Team, P.C.
("The Northrop Team"), Creighton E. Northrop, III ("Creig
Northrop"), Carla Northrop, Lakeview Title Company, Inc.
("Lakeview"), and Lindell C. Eagan, (collectively "the
Defendants"),[1] for violating the Real Estate Settlement
Procedures Act ("RESPA").[2]  Pending are the Plaintiffs' motion

---

[1] For ease of reference, Long & Foster, The Northrop Team, Creig
Northrop, and Carla Northrop will be referred to collectively as
"The Long & Foster Defendants."  That same group, without Long &
Foster, will be referred to collectively as "The Northrop
Defendants."  Lakeview and Eagan will be referred to
collectively as "The Lakeview Defendants."

[2] 12 U.S.C. §§ 2601 et seq.

to dismiss the Northrop Defendants' counterclaim, the
Plaintiffs' motion to direct notice, and the Defendants' motion
to file a surreply.  No hearing is necessary.  *See* Local Rule
105.6 (D. Md. 2011).  For the following reasons, the Defendants'
motion for leave to file a surreply will be denied.  The
Plaintiffs' motion to dismiss will be granted; the motion to
direct notice will be granted in part and denied in part.

I.   Background[3]

     A.   Factual Background

     This case arises out of an alleged 13 year scheme for real
estate agents[4] to receive over half a million dollars in illegal

---

[3] The facts are from the first amended class action complaint
(hereinafter, "Am. Compl.").  ECF No. 89.  For a motion to
dismiss, the well-pled allegations in the complaint are accepted
as true.  *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th
Cir. 2011).  A court may consider "documents incorporated into
the complaint by reference, and matters of which a court may
take judicial notice" in deciding the futility of a motion to
amend.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551
U.S. 308, 322 (2007).

[4] Long & Foster is the real estate broker for Creig Northrop,
Carla Northrop, and The Northrop Team.  *See* Am. Compl. ¶¶ 10,
11.  Long & Foster is a Virginia corporation registered to do
business in Maryland.  *Id.* ¶ 6.  The Northrop Team is a Maryland
corporation with its principal place of business in Howard
County.  *Id.* ¶ 3.  Creig Northrop is a resident of Howard
County, the President of the Northrop Team, and "a salesperson
for Long & Foster."  *Id.* ¶ 4.  Carla Northrop is a resident of
Howard County, the Vice President of the Northrop Team, and "a
salesperson for Long & Foster."  *Id.* ¶ 5.

kickbacks from a title insurance service[5] for referrals.  Am.
Compl. ¶ 1.  Specifically, the Northrop Defendants referred the
Plaintiffs and members of the Class exclusively to Lakeview for
real estate settlement services as a *quid pro quo* for
compensation from the Lakeview Defendants.  *Id.* ¶ 28.  The
Defendants used a "sham employment agreement and a sham
Marketing Agreement" to "generate unearned fees and kickbacks."
*Id.* ¶ 1.

    1.    The Named Plaintiffs' Home Purchase

In June 2008, the Named Plaintiffs hired Long & Foster,
Creig Northrop, and the Northrop Team to represent them in
buying a new home.  *See* Am. Compl. ¶ 42.  They referred the
Named Plaintiffs to Lakeview for title and settlement services.
*Id.* ¶ 43.  Based on this recommendation, the Named Plaintiffs
used Lakeview in the purchase of their home.  *Id.*  On July 25,
2008, the Named Plaintiffs closed on their home.  *Id.*

    2.    Alleged Kickback Scheme

"[T]o conceal" their illegal referral fee agreement, the
Defendants "devised two separate sham arrangements."  Am. Compl.
¶ 29.  From 2000 through 2007, the Defendants created a "sham
employment arrangement" between Lakeview and Carla Northrop, "to
disguise payments of illegal referral fees."  *Id.* ¶ 30.  From

---

[5] Lakeview is a Maryland corporation that provides title
services, and Eagan is the President and part owner of Lakeview.
*See* Am. Compl. ¶¶ 7, 8.

2000, Carla Northrop was a full-time employee of the Northrop Team. *Id.* ¶ 31. She "was also secretly receiving payments from Lakeview" under an employment agreement, even though she "did not perform any actual work or services for Lakeview." *Id.* Carla Northrop did not appear for work at Lakeview, and she did not conduct any closings or process any files for Lakeview. *Id.* Lakeview did not provide her with an office, telephone number, or email address. *Id.* The Defendants "concealed" Carla Northrop's "supposed employment at Lakeview from the public."[6] Her employment with Lakeview was never disclosed to the Named Plaintiffs or others similarly situated. *See* Am. Compl. ¶ 32.

In 2008, Lakeview stopped paying Carla Northrop. *See id.* ¶ 33. Instead, Lakeview "began funneling the illegal kickbacks for referrals through a sham 'Marketing Agreement'" with Creig Northrop and The Northrop Team. *Id.* Creig Northrop and Eagan negotiated and signed the Marketing Agreement on behalf of the Northrop Team and Lakeview. *Id.* The Marketing Agreement provided that Creig Northrop and the Northrop Team would designate Lakeview as their exclusive settlement and title company and would "provide mostly unspecified 'marketing

---

[6] *See* ECF No. 65-4 ¶ 32. The Northrop team website did not mention her employment at Lakeview, her employment was not referenced in the Northrop Team client packet, and Lakeview's website did not list her as an employee. *Id.* Other employees of the Northrop Team and Long & Foster were unaware of her employment with Lakeview. *Id.*

services.'"  *Id.* ¶ 34.  The Marketing Agreement also provided

that Creig Northrop and the Northrop Team would not endorse any

other settlement and title insurance companies, and they would

"use their reasonable effort to cause its affiliates and their

respective partners, stockholders, and senior officials" not to

endorse any other company.  *Id.* ¶ 35.

Under the Marketing Agreement, Lakeview agreed to pay Creig

Northrop and the Northrop Team $6,000.00 per month for marketing

services.  *See* Am. Compl. ¶ 36.  Lakeview actually paid as much

as $12,000 per month.  *Id.*  Eagan "authorized the overpayments

under the guise of the sham Marketing Agreement."  *Id.*  Creig

Northrop and the Northrop Team received over $500,000 under the

Marketing Agreement.  *Id.*  There is no record of "any real joint

marketing services reasonably related to actual amounts paid by

Lakeview."  *Id.* ¶ 37.

The relationship between Lakeview and the Northrop

Defendants "was never disclosed to, and actively concealed from"

Northrop's clients.  *See* Am. Compl. ¶ 38.  At every settlement

Lakeview presented Affiliated Business Arrangement ("ABA")

Disclosures prepared by Long & Foster.  *Id.*  The ABA Disclosure

form stated:

> This is to give you notice that Long & Foster Real
> Estate, Inc. ("Long & Foster") has a business
> relationship (e.g., direct or indirect ownership
> interest, joint ventures and/or contractual
> relationships including marketing agreements and/or

office leases) with the following mortgage, title,
closing, and insurance service providers . . . As a
result of these relationships referrals to any of the
above-listed entities may provide Long & Foster
(and/or any of its subsidiaries or affiliates) with a
financial or other benefit.

*Id.* The ABA Disclosure included several title companies,
but it did not include Lakeview. *Id.* Class members
"reasonably relied" that the disclosure "included the title
companies that Long & Foster, or its affiliates (including
the Northrop Team) had a financial relationship with." *Id.*

B.   Procedural History

On March 27, 2013, the Named Plaintiffs, on behalf of
themselves and others similarly situated, sued the Defendants
for violating RESPA.  ECF No. 1.  On May 13, 2013, the
Defendants moved to dismiss.  ECF Nos. 23, 26.  On July 3, 2013,
the Plaintiffs opposed the motion, and moved for leave to file
an amended complaint.  ECF Nos. 35, 36.

On January 29, 2014, the Court issued a memorandum opinion
and order denying the Plaintiffs' motion to file an amended
complaint as to the claims against Carla Northrop and Long &
Foster for futility.  *See* ECF Nos. 57, 58.  The Court granted
the motion to amend as to all other Defendants.  *Id.*  The Court
granted the Long & Foster Defendants' motion to dismiss as to
Carla Northrop and Long & Foster, and denied the motion as moot
as to all other Defendants.  *Id.*  The Court denied as moot the

Lakeview Defendants' motion to dismiss.  *Id.*  The Court granted the Plaintiffs' motion to certify a class, as amended by the Court.  *Id.*  The Court certified a class consisting of:

> All Maryland residents who retained Long & Foster Real Estate, Inc., Creighton Northrop, III, and the Creig Northrop Team, P.C. to represent them in the purchase of a primary residence between January 1, 2008 to the present and settled on the purchase of their primary residence at Lakeview Title Company, Inc.

*Id.*

On February 13, 2014, the Plaintiffs moved for leave to file a second amended complaint and to alter or amend the judgment.  ECF Nos. 65, 66.  The Plaintiffs sought to have the Court dismiss Long & Foster without prejudice so that the Plaintiffs could file an amended complaint alleging a proper agency relationship.  *See* ECF No. 66-1 at 1.

On May 14, 2014, the Plaintiffs moved to direct notice to the class members.  ECF No. 78.  On May 30, 2014, the Defendants opposed.  ECF No. 79.  On June 17, 2014, the Plaintiffs replied.  ECF No. 81.  On June 24, 2014, the Defendants moved for leave to file a surreply.  ECF No. 82.

On July 24, 2014, the Court issued a memorandum opinion and order denying the Plaintiffs' motions to file a second amended complaint and for leave to alter or amend the judgment.  ECF Nos. 84-85.  On August 15, 2014, the Plaintiffs filed an amended complaint.  ECF No. 89.  On August 25, 2014, the Northrop

7

Defendants answered the complaint and filed a counterclaim

"against any Class members" for attorney's fees.  ECF No. 91 at

10.  The Northrop Defendants asserted that the residential

contract of sale ("the Contract") between the Named Plaintiffs

and Northrop created a contractual attorney's fees provision.[7]

*Id.*  Paragraph 35 of the Contract provided, in pertinent part:

> ATTORNEYS FEES:  . . .  In any action or proceeding
> between the Buyer and Seller and/or between Buyer and
> Broker(s) and/or Seller and Broker(s) resulting in
> Broker(s) being made a party to such action or
> proceeding, including, but not limited to, any
> litigation, arbitration, or complaint and claim before
> the Maryland Real Estate Commission, whether as a
> defendant, cross-defendant, third-party defendant or
> respondent, Buyer and Seller jointly and severally
> agree to indemnify and hold Broker(s) harmless from
> and against any and all liability, loss, cost,
> damages or expenses (including filing fees, court
> costs, service of process fees, transcript fees and
> attorneys' fees) incurred by Broker(s) in such action
> or proceeding, providing that such action or
> proceeding does not result in a judgment against
> Broker(s).

> As used in this Contract, the term "Broker(s)" shall
> mean: (a) the two (2) Brokers as identified at the top
> of Page 10 of this Contract; (b) the two (2) named
> Sales Associates identified on Page 10 of the
> Contract; and (c) any agent, subagent, salesperson,
> independent contractor and/or employees of Broker(s).
> The term "Broker(s)" shall also mean, in the
> singular, any or either of the named Broker(s)
> and/or Sales Associate(s) as identified or, in the
> plural, both of the named Brokers and/or Sales
> Associates as identified.

> This Paragraph shall apply to any and all such
> action(s) or proceeding(s) against Broker(s) including

---

[7] The Northrop Defendants assert that all potential class
members have similar contractual provisions.  *See* ECF No. 108 at
3-5.

those action(s) or proceeding(s) based, in whole or in part, upon any alleged act(s) or omission(s) by Broker(s), including, but not limited to, any alleged act of misrepresentation, fraud, nondisclosure, negligence, violation of any statutory or common law duty, or breach of fiduciary duty by Broker(s). The provisions of this Paragraph shall survive closing and shall not be deemed to have been extinguished by merger with the deed.

ECF No. 91 at 10-11.   Thus, the Northrop Defendants argue that "all such Class members who do not opt out of this suit have likewise agreed to indemnify The Northrop Counter-Plaintiffs for all liability, loss, cost, damages or expenses (including filing fees, court costs, service of process fees, transcript fees and attorneys' fees) incurred by them in this matter, unless judgment is entered against The Northrop Counter- Plaintiffs." *Id.* at 11-12.

On August 27, 2014, the Plaintiffs moved to dismiss the counterclaim.   ECF No. 93.   On September 25, 2014, the Northrop Defendants opposed the motion.   ECF No. 108.   On October 14, 2014, the Plaintiffs replied.   ECF No. 116.

II.   Analysis

   A. The Plaintiffs' Motion to Dismiss the Northrop Defendants' Counterclaim

   1. Legal Standards

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief may be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but

does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id*. at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

10

alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

2. The Northrop Defendants' Counterclaim

The Plaintiffs argue that the Northrop Defendants' counterclaim must be dismissed because RESPA does not permit fee-shifting.[8] ECF No. 93-1 at 1-2.   The Defendants assert that RESPA allows for such contractual provisions.   ECF No. 108 at 13.

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), the Supreme Court creates a "plaintiff-friendly dual standard"[9] for prevailing party attorney's fees in Title VII suits.   *See* 434 U.S. at 420-24.   Under the standard, a prevailing Title VII plaintiff would ordinarily be awarded attorney's fees under that statute, but a prevailing defendant would only receive fees if "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421.   The Court reasoned that "the plaintiff is the chosen instrument of Congress to vindicate a policy that

---

[8] The Plaintiffs also argue that the contract was unconscion-able.   ECF No. 93-1 at 6.   Because the Court will dismiss the counterclaim under the RESPA analysis, it will not address the parties' unconscionability arguments.

[9] *Lane v. Residential Funding Corp.*, 323 F.3d 739, 742 (9th Cir. 2003).

11

Congress considered of the highest priority." *Id.* at 419 (internal quotations and citation omitted).

Since *Christiansburg*, courts have expanded the plaintiff-friendly dual standard to other statutes.[10]  These courts "look to different equitable considerations to determine whether [defendant prevailing-party attorney's] fees should be awarded. In this context, courts are concerned that plaintiffs with legitimate, but not airtight, claims might be discouraged from pursuing such claims if faced with the potential threat of fee shifting." *Waterkeeper Alliance*, 2013 WL 4561739, at *2.

In *Scoggins v. Lee's Crossing Homeowners Ass'n.*, 718 F.3d 262 (4th Cir. 2013), the Fourth Circuit applied *Christiansburg* to the prevailing defendants' motion for costs under the Fair Housing Amendments Act ("FHAA").[11]  The Court reasoned that the FHAA served a similar purpose as Civil Rights Act claims and "reflects a legislative choice to allow aggrieved citizens to advance the public interest." *Id.* at 276.  "In light of the public policy objectives inherent in encouraging private plaintiffs to seek redress of FHAA violations, it would be incongruous to allow bodies such as the HOA to enforce by

---

[10] *See, e.g.*, *Waterkeeper Alliance v. Hudson*, No. WMN-10-487, 2013 WL 4561739, at *1 (D. Md. Aug. 27, 2013) (applying *Christiansburg* to prevailing party attorney's fees under the Clean Waters Act).

[11] 42 U.S.C. §§ 3601, *et seq.*

contract an attorneys' fees provision against a plaintiff who has brought an FHAA action in good faith.  Such a provision, if enforced by the courts, would have the natural and counterproductive effect of dissuading individuals from filing an FHAA lawsuit when they have a reasonable basis on which to assert their claims."  *Id*.

Originally RESPA[12] provided that "[i]n any successful action to enforce the liability under this paragraph, the court may award the court costs of the action together with a reasonable attorney's fee as determined by the court."  Pub. L. No. 93-533, 88 Stat. 724, § 8(d)(2)(1974).  Five years after *Christiansburg*, the fees provision was amended to read:

> In any private action brought pursuant to this subsection, the court may award to the prevailing party the court costs of the action together with reasonable attorney's fees.

12 U.S.C. § 2607(d)(5).

---

[12] In passing RESPA, Congress found "that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country. The Congress also finds that it has been over two years since the Secretary of Housing and Urban Development and the Administrator of Veterans' Affairs submitted their joint report to the Congress on "Mortgage Settlement Costs" and that the time has come for the recommendations for Federal legislative action made in that report to be implemented."  12 U.S.C. § 2601(a).

The Ninth Circuit has reasoned that *Christiansburg's* dual standard approach applies to RESPA.[13]  *Lane*, 323 F.3d at 746-48. First, the Ninth Circuit recognized that the fee-shifting statute for RESPA "close[ly] track[ed]" the language of the statute at issue in *Christiansburg*.  *Id.* at 747 ("[C]ongressional use of language taken from case law is an indication that the common law standard is to be imported into a statute.  The close tracking of the language in RESPA and the *Christiansburg* statute thus strongly supports the district court's use of the *Christiansburg* standard, as does the congressional choice to adopt section 2607(d)(5)'s language after *Christiansburg*.") (citations omitted).  "Prior to 1983, RESPA's fee provision only authorized costs and attorney's fees for successful plaintiffs.  The current version indicates a change in that stance, but not a wholesale shift."  *Id.* at 748.

Then, the court compared RESPA to the Fair Debt Collection Practices Act ("FDCPA")[14] and the Condominium and Cooperative Abuse Relief Act[15]--acts to which *Christiansburg* does not apply. *Id.* at 747.  The Ninth Circuit rejected the arguments that these

---

[13] The Fourth Circuit has never addressed whether *Christiansburg* applies to the fee provision of RESPA.

[14] 15 U.S.C. § 1692k(a)(3).

[15] 15 U.S.C. § 3608(d).

were more similar to RESPA that the Civil Rights statutes at issue in *Christiansburg*. *Id*. at 748.

> RESPA exhibits a purpose that embodies many of the factors central to the holding in *Christiansburg*. The *Christiansburg* court emphasized that plaintiffs in Title VII cases are a chosen instrument of Congress, who receive attorneys fees because the unsuccessful defendant is also a violator of federal law. The same holds true for RESPA plaintiffs. These similarities favor adopting *Christiansburg's* dual standard.

*Id*. (internal citations omitted).

Here, the Northrop Defendants argue that *Lane* was incorrectly decided, and that RESPA is similar to the Employee Retirement Income Security Act ("ERISA) to which *Christiansburg's* standard does not apply. ECF No. 108 at 18-19; *Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 969-73 (8th Cir. 2002). However, ERISA's fee provision states that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action *to either party*." 29 U.S.C. § 1132(g)(1). The inclusion of "to either party" in the fee provision negates any comparison to the RESPA provision.

Absent contrary Fourth Circuit authority, the Ninth Circuit's reasoning is persuasive. Additionally, the Eighth Circuit noted that plaintiffs under RESPA are unlikely to receive large awards, and that "Congress [] guaranteed legal

representation under RESPA by permitting attorney's fees and costs as part of each allowable recovery." *Glover v. Stand. Fed. Bank,* 283 F.3d 953, 965 (8th Cir. 2002). Thus, there is evidence that RESPA "reflects a legislative choice to allow aggrieved citizens to advance the public interest,"[16] especially concerning kickback schemes.

Accordingly, "it would be incongruous to allow [the Defendants] to enforce by contract an attorneys' fees provision against [] plaintiff[s] who ha[ve] brought a[] [RESPA] action in good faith." *See Scoggins,* 718 F.3d at 276. The Northrop Defendants have not pled that the Plaintiffs' claims were "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg,* 434 U.S. at 421. The Court will grant the Plaintiffs' motion to dismiss the counterclaim.

B. The Northrop Defendants' Motion to File Surreply

The Northrop Defendants seek to file a surreply to address the Plaintiffs' "new but inaccurate assertions in their Reply in Support of Motion to Direct Notice." ECF No. 82 at 1. The Northrop Defendants argue that the Plaintiffs, for the first time in their reply, assert that Long & Foster "never raised . . . that equitable tolling would not apply . . . ," and "raise a new and erroneous argument, with reference to a decision in

---

[16] *Scoggins,* 718 F.3d at 276.

*Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 486 (D. Md. 2009)."   ECF No. 82 at 1-2.

Unless otherwise ordered by the Court, a party generally may not file a surreply.   Local Rule 105.2(a).   Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented for the first time in the opposing party's reply.   *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

The Plaintiffs did not raise a new matter that the Northrop Defendants were unable to address.   ECF No. 81 at 2.   The Northrop Defendants wish to file a surreply to respond to what they feel is a mischaracterization of the facts and the holding in *Proctor*, not to any new issue raised by the Plaintiffs.   *See* ECF No. 82 at 2-3.   The Northrop Defendants' desire to interpret a case introduced by the Plaintiffs in their Reply is an insufficient ground for a surreply.[17]   Moreover, the central arguments made in the surreply relate to the effect the Plaintiffs' motion to amend the judgment (allowing Long & Foster back into the action) would have on class notice.   *See* ECF No. 82 at 2-3.   On July 24, 2014, the Court denied the Plaintiffs' motions to file a second amended complaint and for leave to

---

[17] *See TECH USA, Inc. v. Evans*, 529 F. Supp. 2d 853, 862 (D. Md. 2009) (holding that there is no basis to permit a plaintiff to file a surreply if a defendant does not raise new legal issues or new theories in its reply brief).

alter or amend the judgment, making the Northrop Defendants'
arguments concerning Long & Foster moot.  ECF Nos. 84-85.
Accordingly, the motion for leave to file a surreply will be
denied.

C. The Plaintiffs' Motion to Direct Notice

The Named Plaintiffs request that the Court issue an order
directing the Named Plaintiffs to provide notice to all class
members.  ECF No. 78 at 1.  They propose a two-tier notice
system--postcard notice which will direct class members to a
website where long-form notice is located.  *Id.*, Exhs. A, B.
The Named Plaintiffs also request an order requiring the
Defendants to provide a finalized list of class members.  *Id.* at
3.

The Court certified a class consisting of:

> All Maryland residents who retained Long & Foster
> Real Estate, Inc., Creighton Northrop, III, and the
> Creig Northrop Team, P.C. to represent them in the
> purchase of a primary residence between January 1,
> 2008 to the present and settled on the purchase of
> their primary residence at Lakeview Title Company,
> Inc.

ECF Nos. 57, 58.  Under Federal Rule of Civil Procedure
23(b)(3):

> [T]he court must direct to class members the best
> notice that is practicable under the circumstances,
> including individual notice to all members who can be
> identified through reasonable effort. The notice must
> clearly and concisely state in plain, easily
> understood language:

(i)     the nature of the action;

(ii)    the definition of the class certified;

(iii)   the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

"[T]he plain language of this Rule requires that individual notice be sent to all class members who can be identified with reasonable effort." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 349 (1978). However, the Rule does not specify the timing of such notice. *See* Fed. R. Civ. P. 23(b)(3).

In this case, the Court will deny the Plaintiffs' motion to direct notice because the proposed notice is deficient. First, two forms of notice are unnecessary in a case such as this one in which there is a limited number of class members.[18] *See Minter v. Wells Fargo Bank*, 283 F.R.D. 268, 271-72 (D. Md. 2012) (permitting postcard notice followed by online long form notice in a case involving 143,153 loans and over 217,000 class members). This is especially true here, where the postcard notice is somewhat misleading and contains very little of the information required by Fed, R. Civ. P. 23(b)(3). *See* ECF No. 78, Exh. A.

---

[18] The current estimated number of class members is between 1,100 and 1,500. ECF No. 78 at 2; ECF No. 79 at 10.

Further, the proposed long form notice "does not apprise potential class members that some of their claims are subject to the additional hurdle of equitable tolling." *See* ECF No. 78, Exh. 8; *Minter*, 283 F.R.D. at 272.  "Notwithstanding, it is important that potential class members be fully informed about the scope of the class when deciding whether to opt-out." *Minter*, 283 F.R.D. at 272.  Without such information, the Plaintiffs' proposed notice is deficient.

However, the Court will direct the Defendants to create a list of class members.  "The usual rule is that a plaintiff must initially bear the cost of notice to the class . . . .  Where . . . , the relationship between the parties is truly adversary, the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178-79 (1974).  "In some instances, however, the defendant may be able to perform a necessary task with less difficulty or expense than could the representative plaintiff.  In such cases, . . . the district court properly may exercise its discretion under Rule 23(d) to order the defendant to perform the task in question." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. at 357 (court may order the defendant to create a class list).

Here, the Defendants have access to all the records that identify the class, and should therefore bear the burden of

producing the class list.  However, *Oppenheimer* warns that requiring defendants to perform a task should not necessarily shift the cost of the task from the plaintiff.  *See id.* at 358-59.  If after the list is compiled, the Plaintiffs have found the cost of its creation so substantial as to create "an undue burden or expense," they may move for the Defendants to bear the cost--otherwise the cost of the list's creation will remain with the Named Plaintiffs because they "seek[] to maintain the suit as a class action."  *Id.*

III. Conclusion

For the reasons stated above, the Plaintiffs' motion to dismiss the Northrop Defendants' counterclaim will be granted. The Northrop Defendants' motion to file a surreply will be denied.  The Plaintiffs' motion to direct notice will be granted in part and denied in part.


_____3/2/15_____
Date

_____
William D. Quarles, Jr.
United States District Judge